**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| UNIQUE FITNESS CONCEPTS, LLC. | ) | No. 24-01183 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |

**KAPITUS SERVICING, INC.'S OBJECTION TO**
**DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY**

Kapitus Servicing, Inc., as sub-servicing agent for Kapitus LLC ("Kapitus"), a secured creditor and party in interest, files this Objection to Debtor's Motion to Extend the Automatic Stay ("Debtor's Motion") [DE 16 and 27] because Debtor has not established that the principals are entitled to the protection of the automatic stay.[1] Kapitus already has a final judgment against Harvey Reich, one of the Debtor's principals, and given the expenses Kapitus incurred in obtaining its judgment, it would be inequitable for the Court to stay Kapitus's efforts to collect non-estate assets. In support of its opposition to the Debtor's Motion, Kapitus states as follows:

**INTRODUCTION**

1.  The Debtor's extraordinary request for an order barring Kapitus, a judgment creditor, from enforcing its final judgment against Harvey Reich, one of the Debtor's principals and a guarantor of the Debtor's obligation to Kapitus, is contrary to established law regarding the purpose and scope of the automatic stay and is unsupported by any evidence. The Debtor's Motion should be denied because a guarantor with his own independent liability to a creditor cannot use an entity's bankruptcy filing to shield non-estate assets from a judgment creditor.

---

[1] Notwithstanding any of the allegations and claims herein, the filing of this objection, and any appearance in this bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without wavier, and is subject to the express reservation, of any and all of Kapitus's rights, defenses, and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Further, Kapitus expressly incorporates any reservation of rights set forth in any and all Proofs of Claim filed in this matter.

## FACTUAL BACKGROUND

2. On January 29, 2024, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*, in the United States Bankruptcy Court for the Northern District of Illinois (the "Court").

3. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362.

5. On January 30, 2024, Robert P. Handler of Commercial Recovery Associates, LLC, was appointed as Subchapter V Trustee.

6. The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. The Debtor is in the fitness equipment business.

**A. Kapitus Enters Into a Series of Agreements with the Debtor and its Guarantor, Harvey Reich.**

8. On or about July 29, 2022, prior to the commencement of this case, the Debtor, Harvey Reich (one of the Debtor's principals), and Kapitus entered into a Loan Agreement ("Loan Agreement"), a Security Agreement ("Security Agreement"), and a Guaranty (collectively "the Agreements"), attached hereto as **Exhibit A.**

9. Under the Agreements, in exchange for a loan in the principal amount of $251,000.00, Debtor granted a security interest in Debtor's assets and Mr. Reich personally guaranteed the Debtor's agreement to repay the loan.

10. Pursuant to the Agreements, the Debtor authorized Kapitus to ACH debit a total of $311,240.00 from the Debtor's depositing bank account to be paid in equal weekly installments of $3,994.00.

2

11. On or about February 8, 2023, Debtor defaulted on its obligations under the Loan Agreement and ceased all payments thereafter.

12. Similarly, on or about February 8, 2023, Mr. Reich defaulted on his obligations under the Guaranty.

**B.    Kapitus Obtains a Judgment Against the Debtor and Mr. Reich.**

13. On or about June 15, 2023, Kapitus filed a breach of contract and fraud lawsuit against the Debtor and Mr. Reich in the Circuit Court of the County of Chesterfield, Virginia, Case No. CL-23-2229. The Debtor and Mr. Reich were served and appeared but did not file an answer to the complaint, despite being given continuances to do so on November 8, 2023, and January 3, 2024. *See* **Exhibit B,** Judgment Order dated Jan. 12, 2024.

14. On or about January 12, 2024, the Virginia court entered a judgment against the Debtor and Mr. Reich, finding that:

> [the Debtor and Mr. Reich] are in default, that the [the Debtor and Mr. Reich] knowingly and intentionally misrepresented material facts, upon which [Kapitus] reasonably relied, and that as a result of the [the Debtor's and Mr. Reich's] fraudulent inducement [Kapitus] suffered damages, and that [Kapitus] is entitled to judgment in the principal amount of Two Hundred Fifty Thousand Eight Hundred Seventy and 00/100 Dollars ($255,870.00), accrued interest of Four Thousand One Hundred Twelve and 50/100 Dollars ($4,112.50)… plus judgment interest accruing at the contractual rate of ten (10%) per annum from February 8, 2022, attorney's fees of Sixty-Four Thousand Nine Hundred Ninety-Five and 62/100 Dollars ($64,994.62), and any and all court costs.

*Id.* at 2.

15. The judgment was entered against the Debtor and Mr. Reich jointly and severally. *Id.*

16. On February 6, 2024, Debtor filed the instant Motion seeking to extend the automatic stay to protect against Kapitus's efforts to collect on its judgment against Mr. Reich, a non-party to this bankruptcy, and to extend the stay to bar three other creditors from pursuing

3

litigation against one or both of the Debtor's principals. [DE 16.] On February 20, 2024, after initial presentment and with leave of Court, the Debtor filed a Supplemental Filing in Support of the Debtor's Motion. [DE 27.]

## **ARGUMENT**

17. It is well settled that the automatic stay under 11 U.S.C. § 362(a) protects only the debtor filing bankruptcy proceedings and not nonbankrupt co-defendants. *Pitts v. Unarco Indus.*, 698 F.2d 313, 314 (7th Cir. 1983). Generally, automatic stays "do not bar actions against a debtor's insurers, guarantors, or sureties." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). Courts in the Seventh Circuit have identified two narrow exceptions to this general rule. *Id.* The debtor has the burden to establish that an exception applies. *Nike USA, Inc. v. First to the Finish Rel Estate, LLC*, Case No. 21-cv-3187, 2022 U.S. Dist. LEXIS 118445, at *10, 2022 WL 2483611 (C.D. Ill. July 6, 2022).

18. The first exception, the "identity of interest" exception, applies where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re Fernstrom*, 938 F.2d at 736 (internal citation omitted).

19. The Debtor argues that there is an identity of interest here between it and Mr. Reich because Mr. Reich would make an indemnification claim against the Debtor's estate, such that a judgment against Mr. Reich would ultimately be paid by the Debtor, necessarily implicating the estate's assets. (DE 16 at ¶ 19.) Courts have stayed proceedings against non-debtor defendants prior to judgment where the debtor has an "absolute" duty to indemnify the non-debtor. *Winfield Sols., LLC v. W S Ag Ctr., Inc.*, No. 17-cv-942-slc, 2020 U.S. Dist. LEXIS 250477 at *6, 2020 WL 8613974 (W.D. Wis. June 19, 2020).

20. However, there can be no identity of interest between a party and a non-party at the execution stage. *Id.* Where, as here, the judgment was entered before the bankruptcy petition was filed and the judgment creditor is seeking to execute its judgment by liquidating the assets of the non-bankrupt co-defendant, there is no identity of interest. *Id.*

21. Even if there could be an identity of interest at the execution stage, the Debtor will not be able to meet its burden to prove that the exception applies here because Mr. Reich has no right to indemnification under the Debtor's Operating Agreement for two reasons. First, the judgment against him arose out of his personal obligation under the guaranty, not his actions on behalf of the Debtor; and second, he was found to have engaged in fraud, which he could not have reasonably believed was in the best interests of the Debtor. *See* **Exhibit B**, Judgment Order.

22. Specifically, the indemnification provision of the Debtor's Operating Agreement provides, in relevant part, that:

> 4.7 INDEMNIFICATION. The [Debtor] shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, [in a] pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the [Debtor]) by reason of the fact that he is or was a Member of the [Debtor], Manager, employee or agent of the [Debtor], or is or was serving at the request of the [Debtor], for instant expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the [Debtor.]

[DE 21, Operating Agreement at § 4.7.]

23. The indemnification provision does not apply here because Mr. Reich's liability to Kapitus arises out of his breach of his personal obligations as a guarantor, not "by reason of" his status as a principal or agent of the Debtor. Therefore, he is not eligible for indemnification under the Debtor's Operating Agreement, which only permits indemnification if the person is made a defendant "by reason of" their role as a member, manager, employee, or agent of the Debtor. It is

5

well settled under both Illinois law (which governs the operating agreement) and Virginia law (which governs the Agreements) that the liability of a guarantor to the creditor is separate from the liability of the primary debtor. *In re White*, 415 B.R. 696, 699 (Bankr. N.D. Ill. 2009); *McDonald v. Nat'l Enters.*, 262 Va. 184, 189 (2001). Mr. Reich cannot invoke his independent obligation as the Debtor's guarantor to shield his personal, non-estate assets from Kapitus. Indeed, any finding to the contrary would undermine the purpose of a personal guaranty, which is to protect the creditor from non-payment should the principal debtor become unable to pay. *Celtic Bank Corp. v. Exec. Title, Inc.*, No. 15 CV 30, 2015 U.S. Dist. LEXIS 139251, at *9, 2015 WL 5951844 (N.D. Ill. Oct. 13, 2015) (declining to extend stay to protect guarantor).

24. The second reason that Mr. Reich cannot qualify for indemnification under the Debtor's Operating Agreement is that the Virginia court's finding that he engaged in fraud precludes any finding that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the Debtor's best interest. To the contrary: the Virginia court found that he knowingly and intentionally misrepresented material facts and that as a result of his fraudulent inducement Kapitus suffered damages. **Exhibit B**, at 2. Based on these disqualifying facts, the Debtor cannot meet its burden to show that the "identity of interest" exception applies.

25. The second exception, the "irreparable harm" exception, does not apply either and the Debtor cannot satisfy its burden of proof. The only irreparable harm claimed by the Debtor is that if Kapitus is allowed to proceed against the guarantor, the principals' need to defend against pending lawsuits may distract from their efforts to maximize creditor value. [DE 16 at ¶ 21.] But there is no substantive defense for Mr. Reich to prepare and nothing to distract him from the reorganization: Kapitus already has its final judgment against him. From here, Mr. Reich must simply respond honestly to any citations to discover assets and comply with court turnover orders.

6

Indeed, the only irreparable harm here would be if Kapitus was precluded from collecting from Mr. Reich after expending the costs of obtaining a judgment. *See In re Fernstrom*, 938 F.2d at 736-737 (denying a stay because it would cause "great prejudice" to the plaintiff "by forcing it, in effect, to write off the expenses it incurred in litigating its case against Fernstrom to the eve of trial").

26. The two cases relied upon by the Debtor in support of its "irreparable harm" argument are patently distinguishable because the stayed litigation was in its nascent stages, the litigation would necessarily distract the principals from complex reorganizations, and any judgment would implicate the debtor's assets and posed a risk of collateral estoppel. *Eastern Air Lines v. Rolleston*, 111 B.R. 423 (S.D.N.Y. 1990) (referred to by Debtor as *In re Ionosphere Clubs*) (extending the automatic stay to protect the airline's chairman and board of directors from defending against a class action suit brought by pilots who alleged that the airline did not make sufficient pension contributions while they were on strike); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 900 (Bankr. E.D.N.Y. 1993) (extending the automatic stay to protect the debtor's principals from a state court action to enforce payment of a note that had only been filed after the debtor filed its bankruptcy petition). Here, none of these circumstances are present. Kapitus already has its judgment, so there is no risk of collateral estoppel or protracted litigation distracting Mr. Reich. This matter is a relatively simple reorganization, especially when compared to the reorganization of a national airline, and will not require a great deal of attention from Mr. Reich, who is represented by capable counsel. The assets of the bankruptcy estate are not implicated; Kapitus seeks only to collect from non-estate assets. For these reasons, the Debtor cannot show irreparable harm and has not met its burden to prove that the second exception applies.

27. Finally, the Debtor argues that the stay should be extended to enjoin all of the pending litigation against the principals because an adverse judgment in the litigation will collaterally estop the debtor in subsequent litigation. [DE 16 at ¶ 26.] As explained previously, Kapitus already has its judgment against both the Debtor and Mr. Reich: there is no risk of any additional findings that could harm the Debtor or the bankruptcy estate.

28. For all of these reasons, the Debtor has failed to satisfy its burden of proof to show that any of the exceptions apply or that extending the stay is justified. The equities clearly favor Kapitus's right to execute its judgment and recover non-estate assets from a non-party to this bankruptcy.

## CONCLUSION

WHEREFORE, Kapitus respectfully requests that the Court enter an order denying Debtor's Motion with respect to Kapitus' judgment against Mr. Reich and granting such other and further relief as the Court may deem just and proper.

Dated: February 27, 2024                Respectfully submitted,

**KAPITUS SERVICING, INC.**

By: /s/ Sandy L. Morris
   One of Its Attorneys

Susan Valentine (IL ARDC #6196269)
Sandy L. Morris (IL ARDC #6270309)
Valentine Austriaco & Bueschel, P.C
300 E. Randolph Street, Suite 3400
Chicago, IL  60601
312-288-8285
svalentine@vablawfirm.com
smorris@vablawfirm.com
*Attorneys for Creditor Kapitus Services, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 27, 2024, I caused a true and correct copy of the foregoing OBJECTION TO DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY to be filed with the Court's CM/ECF system and to be served in accordance therewith to all parties receiving electronic noticing.

                                                /s/ Sandy L. Morris